## McCormick v. Shuman

*T. J. Evans*, for plaintiffs.

*H. R. Berninger* and *D. A. Lewis*, for defendant.

KREISHER, P. J., February 18, 1957.—On June 28, 1956, plaintiffs filed a complaint in trespass to the above number and term and the same was duly served on defendant by the Sheriff of Columbia County on June 29, 1956.

By stipulation of counsel with court approval, the time for filing of pleadings by defendant was extended

from time to time, and on December 8, 1956, counsel for defendant filed preliminary objections to the complaint.

After oral argument of counsel and submission of written briefs the matter is now before the court for disposition of said preliminary objections.

A brief summary of the facts set forth in the complaint is that plaintiffs became the owners of a house and lot in Mount Pleasant Township, this county, in 1953.

On August 24, 1953, plaintiffs, wishing to have their home and its contents insured against loss by fire, contacted defendant who operates an insurance agency. As a result of this visit, defendant caused to be issued to plaintiffs a three year fire and lightning insurance policy in the amount of $2,000 for a total premium of $14 with the Valley Forge Mutual Insurance Company of Philadelphia being made the insurer.

On January 30, 1954, at plaintiff's request, defendant in consideration of an additional premium of $17.96 added $1,000 to item one of the policy making a total of $3,000 insurance on the dwelling and adding $2,000 to item two of the policy making a total of $2,000 insurance on the household contents in said dwelling.

On August 24, 1954, defendant at plaintiffs' request changed the loss payable mortgage clause from a bank to Aaron M. Wolfe and wife, mortgagees.

On September 27, 1954, the Pennsylvania Insurance Commissioner suspended the Valley Forge Mutual Insurance Company from doing business in Pennsylvania because of substantial financial deficits as of December 31, 1953.

It is alleged that defendant, as an insurance agent registered with the commission, received notice of this action but he failed to notify plaintiffs who received no such notice from the commissioner or the insurance

company, and defendant took no action of any nature in the matter.

On December 25, 1954, during plaintiffs' absence, their entire home and contents were destroyed by a fire of unknown origin. Plaintiffs immediately notified defendant of their loss at which time defendant directed the filing of a proof of loss assuring plaintiffs they would recover without mentioning the financial status of the suspended company.

On June 2, 1955, plaintiffs, having received no settlement, wrote to the Pennsylvania Insurance Department at Harrisburg, and the reply to their inquiry informed them for the first time of the company's status. Thereafter, plaintiffs contacted defendant and it is alleged defendant then admitted his failure to disclose said facts to plaintiffs and his failure to cause any reinsurance to be issued to plaintiffs after notice.

The complaint alleges that defendant's nonfeasance is actionable negligence which has resulted in damages to them not only for the loss on the policy but also for a loss of interest they had to pay on the mortgage balance and for an impairment of their credit.

Defendant's preliminary objections are set forth under four separate headings. The first, thereof, reads as follows:

"Motion to Strike Plaintiffs' Complaint:

"1.    Plaintiffs' Complaint as filed sets forth a cause of Action in Assumpsit, and plaintiffs have brought their action in Trespass.

"2.    The allegations of Paragraph 12 of the Complaint set forth a claim in Assumpsit and are not properly a part of an action in Trespass."

The same contention was made in the case of Fry v. Barrett, 55 D. & C., 640. The very able opinion of Dannehower, J., disposing of this question cannot in our opinion be improved upon, and therefore, we quote as follows:

"Whether plaintiff has selected the proper form of remedy is the really substantial question in this case, and involves a consideration of the possible relationships between an insurance agent or broker and an applicant for insurance, as well as a consideration of the principles concerning appropriate remedies for breach of contract. The leading textwriters on insurance law give us considerable light on this phase of the case. In 16 Appleman, Insurance Law and Practice, sec. 8841, p. 300, it is said:

" 'An insurance broker is the agent of the insured in negotiating for a policy, and owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting insurance. While such broker is not obligated to assume the duty of procuring a policy, without consideration for his promise, he must exercise ordinary care in the performance of such duty when assumed, the promise to take the policy being a sufficient consideration. . . .

" 'If a broker or agent of the insured neglects to procure insurance, or does not follow instructions, or if the policy is void or materially defective, through the agent's fault, he is liable to his principal for any loss he may have sustained thereby. If the agent or broker fails to act with the proper and customary skill and care generally used by those in a like business, such neglect or breach of duty will render him liable in damages, *not exceeding the amount of insurance he was employed to effect.* Connecticut has pointed out that such principal may sue either for breach of contract or in tort for a breach of duty.

" 'It is generally considered that if the neglect or breach of duty of such broker results in loss to his principal, the broker is liable to the same extent as the insurer would have been liable had the insurance been properly effected, and must pay the resulting loss.'

"To the same effect are *1 Cooley's Briefs on Insurance (2nd ed., 1927) 452, 2 Couch, Cyclopedia of Insurance Law, sec. 481, Walker v. Black, 216 Pa. 395 (1907). See also Ursini v. Goldman, 118 Conn. 554, 173 A. 789 (1934)*, which has many features suggestive of the situation in the case at bar. *See also Annotation. 18 A. L. R. 1214.*

"As for the form of action, we are not convinced that the averments of the statement of claim amount to an allegation that defendant tortiously breached the contract. Even if the acts, or failure to act, of defendant do constitute a tort, however, it is well settled that there are many situations, including the present one, in which plaintiff may waive the tort and bring his suit in assumpsit: In 1 Standard Pa. Practice, sec. 105, p. 381, it is said:

" ' . . . On the other hand, there are a number of situations in which the remedies for both a tort and a breach of a contractual obligation are available and in which the injured person, therefore, has a right of election. Trespass is a concurrent remedy with assumpsit for many breaches of contracts which involve more than the mere payment of money, whether the breach consisted of nonfeasance, misfeasance, or malfeasance.

" 'Thus, where a duty arises under an implied undertaking to do an act requiring skill and fidelity, the breach of such duty may be either the subject of assumpsit on the implied promise or of an action for tort . . .'

"Therefore, the first and second questions must be decided in plaintiff's favor."

At the time of argument counsel for defendant took the position that the entire case is without merit, that no such cause of action exists and that all or most of the objections are based on this general proposition making dismissal of the case mandatory.

In Volume 1, Law of Insurance in Pennsylvania, by Goldin, section 128, p. 80, it is stated:

"A broker of insurance assumes to have the requisite knowledge and ability to transact the business for his patrons, and are bound to use reasonable skill, care and diligence. Failure to do this, resulting in a loss to the insured such broker is liable to the insured for the loss so sustained. Walker, Stratman & Co. v. Black, 216 Pa. 395, 65 A. 799: Veley v. Clinger, 18 Pa. Superior Ct. 125, (for jury) : Lamm v. McLean, 15 Del. 432."

In Rossi v. Firemen's Insurance Company, 310 Pa. 242, on page 249 of the opinion it is stated:

"Furthermore, it was testified by several witnesses, without contradiction, that it was the universal and notorious custom of insurance agents to rewrite in solvent companies, without notifying their customers, risks the policies upon which had been rendered worthless by the insolvency of the insurer."

We think what counsel for defendant intended to convey was that plaintiffs are unable to make out a case rather than the proposition that no cause of action exists. The question of whether plaintiffs can make out a case or not cannot be determined at this stage and must await trial.

The allegation that paragraph 12 of the complaint states a claim in assumpsit is without merit. Paragraph 12 merely alleges demand and refusal of settlement which is a proper allegation under the circumstances and in no way determines the action to be brought.

Plaintiffs' action is based on the alleged negligence of defendant which properly sounds in trespass; therefore, defendant's motion to strike must be overruled . . .

The third heading of defendant's preliminary objections is entitled: "Non-Joiner of Necessary and Indispensable Parties."

This objection is based upon the fact that the insurance policy contained a loss payable mortgagee clause and therefore, the mortgagees are an indispensable party, especially since paragraph 13 of the complaint alleges a balance due on the mortgage of $2,844.25, as well as the running of interest indicating that the mortgage is still unpaid.

In Volume 2 Standard Pa. Practice 355, §51, it is stated:

"In Actions Ex Delicto.—In general, both under the prior practice and under the Rules of Civil Procedure, it may be said that all persons jointly affected by a tort—those who are jointly entitled or have a joint legal interest in the property affected—must join in an action ex delicto to recover for the injury, or, as stated by the Pennsylvania Supreme Court, the general rule that where the right is joint the action must be joint applies where the form of action is in tort and the liability springs from a joint contract or interest."

If defendant is found to be liable to plaintiffs for his conduct relative to this insurance policy he might also be found liable to the mortgagees as the liability springs from a joint contract: Pittsburgh Underwriters v. Mutual Life Insurance Company, 149 Pa. Superior Ct. 554.

Therefore, to protect defendant from being subjected to the possibility of double liability and to avoid the multiplicity of suits, we think this objection has merit: Ronca v. British & Foreign Marine Insurance Company, 314 Pa. 449.

Pennsylvania Rule of Civil Procedure 2002 provides that:

". . . all actions shall be prosecuted by and in the name of the real party in interest. . . ."

Being remedial, this rule should receive a liberal interpretation.

Pennsylvania Rule of Civil Procedure 2227 provides that:

"Persons having only a joint interest in the subject matter of an action must be joined on the same side . . ."

Pennsylvania Rule of Civil Procedure 2229 (*a*) provides that:

"Persons may join as plaintiffs who assert any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the rights to relief of all such persons will arise in the action."

In Powell v. Shepard, 381 Pa. 405, on page 412, it is stated:

". . . a party is indispensable where his rights are so connected with the claims of the litigants that no decree can be made between them without impairing such rights: Hartley v. Langkamp and Elder, [243 Pa. 550; Spires et ux v. Hanover Fire Insurance Company, 364 Pa. 52.] (Citations omitted)."

From the foregoing it would seem to follow that the mortgagees have a real interest in the case at bar and they are a necessary party to the action. Therefore, unless plaintiffs secure an assignment of the mortgagees' rights under the policy so that they place themselves in a position to be able to discharge all claims against defendant, the mortgagees must be joined . . .

## Order

And now, to wit, this February 18, 1957, for the reasons set forth in the foregoing opinion, it is ordered, adjudged and decreed as follows:

1. Defendant's motion to strike off plaintiffs' complaint is denied.

2. Defendant's motion for a more specific pleading is denied.

3. Defendant's objection to the nonjoinder of a necessary and indispensable party is sustained, unless plaintiffs, within 10 days from the date hereof, file an assignment of the mortgagees' interest under the policy to plaintiffs, or plaintiffs shall have joined said mortgagees as parties plaintiff.

4. In the event plaintiffs file said assignment or join said mortgagees as parties plaintiff as mentioned under paragraph 3 above, then defendant shall be allowed 30 days from the date hereof to file his answer to the complaint in accordance with the Pennsylvania Rules of Civil Procedure.

5. Defendant's demurrer is overruled.

6. Paragraphs 14 and 15 of plaintiffs' complaint alleging special damages are stricken from said complaint.

And now, to wit, this February 18, 1957, upon action of counsel for both plaintiffs and defendant, exceptions noted and bills sealed.